**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

BRANDON BEST GORDON, AKA
Brandon Brooks Gordon,

*Defendant - Appellant*.

No. 23-2117

D.C. Nos.
1:19-cr-00046-
SWS-1
1:22-cv-00104-
SWS

OPINION

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

BRANDON BEST GORDON, AKA
Brandon Brooks Gordon,

*Defendant - Appellant*.

No. 24-436

D.C. Nos.
1:19-cr-00046-
SWS-1
1:23-cv-00072-
SWS

Appeal from the United States District Court
for the District of Montana
Scott W. Skavdahl, District Judge, Presiding

Argued and Submitted May 22, 2025
Seattle, Washington

Filed August 19, 2025

Before: Ronald M. Gould, Richard C. Tallman, and
Morgan B. Christen, Circuit Judges.

Opinion by Judge Tallman

## SUMMARY[*]

### 28 U.S.C. § 2255

The panel affirmed the district court's denial of relief under 28 U.S.C. § 2255 to Brandon Gordon on his jury conviction and sentence for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

The panel affirmed the district court's holding that counsel's alleged sentencing predictions did not rise to the level of ineffective assistance, making an evidentiary hearing on this claim unnecessary.

The panel held that the district court erred by summarily dismissing Gordon's other claims of ineffective assistance of counsel pursuant to Habeas Rule 4 because, under *Browning v. Baker*, 875 F.3d 444 (9th Cir. 2017), counsel's conduct as a whole must be considered to determine whether

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

it was constitutionally adequate. The panel expanded the certificate of appealability granted to Gordon on the sentencing advice issue to consider whether he received effective assistance of counsel during the plea negotiation stage as a whole. Addressing this question, the panel concluded that counsel did not provide ineffective assistance by failing to move to dismiss a fatally defective indictment under *Rehaif v. United States*, 588 U.S. 225 (2019), which requires that a § 922(g)(1) defendant knew he was a felon when he possessed the firearms in question. Counsel also was not ineffective for failing to file a motion to suppress based on the length of a traffic stop or the unconstitutionality of a search warrant.

The panel concluded that the district court should have considered Gordon's second-in-time § 2255 motion as a permissible motion to amend his first-in-time § 2255 motion because his pending motion under Fed. R. Civ. P. 59(e) to alter or amend the district court's judgment denying him relief on his first § 2255 motion suspended the finality of the original decision. However, the panel denied Gordon relief on this claim because the only argument he raised in his second-in-time § 2255 motion was foreclosed by this court's caselaw, and thus amendment would have been futile. Specifically, Gordon's argument that his conviction violated his rights under the Second Amendment was foreclosed by *United States v. Duarte*, 137 F.4th 743 (9th Cir. 2025) (en banc), which held that § 922(g)(1) is constitutional as applied to non-violent felons like Gordon.

## COUNSEL

Timothy A. Tatarka (argued), Assistant United States Attorney; Jesse A. Laslovich, United States Attorney; Office of the United States Attorney, United States Department of Justice, Billings, Montana; Paulette L. Stewart, Assistant United States Attorney, Office of the United States Attorney, United States Department of Justice, Helena, Montana; for Plaintiff-Appellee.

David F. Ness (argued), Assistant Federal Public Defender; Rachel Julagay, Federal Defender; Federal Defenders of Montana, Great Falls, Montana; for Defendant-Appellant.

## OPINION

TALLMAN, Circuit Judge:

Defendant-Appellant Brandon Gordon was convicted by a jury for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Gordon appealed, and we upheld his conviction. Gordon then filed two separate motions[1] for habeas corpus relief with the district court. The district court denied Gordon's motions, did not grant him an evidentiary hearing on either motion, and did not grant him a certificate of appealability. Gordon now appeals the district court's denials of his habeas motions.

---

[1] We use the nomenclature of "motion" interchangeably with "petition" to reflect the statutory language of 28 U.S.C. § 2255. Courts often do so in the decisions we discuss herein.

We previously certified three questions on appeal: (1) whether Gordon's trial counsel was ineffective because of the discrepancy between counsel's sentencing predictions and the sentence Gordon received, and whether the district court should have held an evidentiary hearing on that issue; (2) whether the district court improperly dismissed Gordon's other ineffective assistance of counsel claims; and (3) whether the district court improperly dismissed Gordon's second-in-time 28 U.S.C. § 2255 motion. We affirm the district court's holding that counsel's alleged sentencing predictions did not rise to the level of ineffective assistance of counsel, making an evidentiary hearing unnecessary. We find the district court erred by summarily dismissing Gordon's other ineffective assistance of counsel claims pursuant to Habeas Rule 4. However, Gordon's claims alleging ineffective assistance of counsel at the plea negotiation stage fail on the merits.

Finally, we hold that the district court should have considered Gordon's second-in-time § 2255 motion as a permissible motion to amend his first-in-time § 2255 motion. Gordon's pending motion to alter or amend the district court's judgment denying Gordon relief on his first § 2255 motion suspended the finality of the original decision. So, the district court should have considered Gordon's second-in-time § 2255 motion as a permissible motion to amend his first § 2255 action. However, we ultimately deny Gordon relief on this claim as well because the only argument Gordon raised in his second-in-time § 2255 motion is foreclosed by our caselaw, and thus amendment would be futile.

# I

On July 17, 2018, two detectives with the Missouri River Drug Task Force (MRDTF) followed a tan Chevrolet Tahoe in Livingston, Montana, to a residence because they suspected that the driver, Danielle Williams, was trafficking methamphetamine. Later that same day, Livingston Police dispatch received a 911 call from a local drive-through coffee shop owner whose shop bordered the residence. The business owner reported that after law enforcement had left the residence, she observed a woman in a tan Tahoe circle the coffee shop's parking lot for almost an hour, then pull through the drive-through without ordering anything. The business owner also reported that she saw a man, later identified as Gordon, climb over the back fence of the residence while carrying a black bag and get into the passenger side of the Tahoe before it drove away. The business owner provided law enforcement with the Tahoe's license plate number.

One of the MRDTF detectives who had been following Williams earlier that day relayed this information to Montana Highway Patrol Trooper Erick Fetterhoff. Fetterhoff was patrolling Interstate 90 east of Livingston and was familiar with Williams and the tan Tahoe from Williams's previous law enforcement encounters. Fetterhoff observed the Tahoe on the interstate, followed it for several miles, and saw it violating a Montana state traffic law. Fetterhoff pulled the car over.

After the stop a variety of suspicious events occurred. First, Williams identified Gordon as "Jamal," though Fetterhoff had already identified Williams's companion as Brandon Gordon through his driver's license. When Fetterhoff asked Gordon to exit the vehicle, Fetterhoff

observed a glass pipe in the passenger's side door pocket. Williams and Gordon gave Fetterhoff inconsistent answers regarding where they were going and what they were doing: Gordon told Fetterhoff that they were driving to Billings for his son's birthday party, but Williams told Fetterhoff that they were out for a drive looking for rocks. Based on these interactions and observations, as well as the information he learned from MRDTF, Fetterhoff believed there was evidence of drug activity in the Tahoe and seized the car to obtain a search warrant. He did not arrest Williams and Gordon, and they walked away from the scene by foot. While later searching the Tahoe after a warrant was issued, officers found a black backpack in the passenger side of the third-row seat, and inside the backpack the officers found drug paraphernalia, two stolen handguns, ammunition, and a bullet-resistant vest.

In October 2018, Gordon was interviewed by an agent with the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives and an MRDTF detective. He agreed to speak to them and signed a *Miranda* waiver. In the interview, Gordon admitted to being a daily methamphetamine user. He also told the officers that when Trooper Fetterhoff stopped the Tahoe, they were driving to Billings to see a drug dealer so that Gordon could use the stolen items found by police in the Tahoe to pay off a drug debt.

## II

In April 2019, Gordon was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and one count of possessing a stolen firearm in violation of 18 U.S.C. § 922(j). Gordon proceeded to a jury trial in October 2019, and the jury acquitted him of possessing a stolen firearm but convicted

him of possessing a firearm as a felon.  He was sentenced to 87 months of imprisonment and three years of supervised release.

Gordon appealed, and we upheld his conviction.  *See United States v. Gordon*, 851 F. App'x 89 (9th Cir. 2021). Following our decision, Gordon filed a timely *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  In that motion, he set forth eight different claims of error, mostly involving alleged ineffective assistance of counsel (IAC) by his trial and appellate attorneys.  Those grounds were that: (1) his trial counsel misinformed him about his sentencing exposure if he proceeded to trial instead of pleading guilty; (2) his indictment was fatally defective because it did not track the statutory language of 18 U.S.C. § 922(g)(1) and his trial and appellate counsel failed to raise this issue; (3) his trial counsel failed to properly investigate his case and did not adequately prepare for trial; (4) his trial counsel failed to file a motion to suppress the evidence seized from the Tahoe; (5) his trial counsel failed to request a "paid informant instruction" for Williams; (6) the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose that Williams was a paid informant; (7) his trial counsel failed to file a Federal Rule of Criminal Procedure 29 motion for acquittal and his appellate counsel provided IAC by not arguing on appeal that there was insufficient evidence to support the jury's guilty verdict; and finally (8) his appellate counsel omitted several nonfrivolous claims.  Gordon requested that the district court vacate his § 922(g)(1) conviction and either dismiss the indictment against him with prejudice, order a new trial, or conduct a full resentencing hearing and permit Gordon to accept a plea offer from the Government.  He also requested an evidentiary hearing.

The district court performed its gatekeeping obligation under Rule 4(b) of the Rules Governing § 2255 Proceedings and dismissed Grounds Two, Three, Four, Five, Seven, and Eight in part. *See* 28 U.S.C. § 2255, Rule 4(b). It ordered briefing from the Government on Grounds One and Six, and on Ground Eight as it applied to those grounds. Following briefing, the district court determined that Gordon had "not carried his burden of establishing his trial attorney provided ineffective assistance of counsel" on Ground One, nor Ground Eight as it applied to Ground One, and denied Gordon relief.[2] The district court did not grant him a certificate of appealability (COA) as it concluded that, even accepting Gordon's assertions as true, Gordon did not satisfy either prong of the *Strickland v. Washington* analysis regarding his attorney's sentencing predictions. 466 U.S. 668 (1984).

Following the district court's decision, Gordon filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), requesting that the district court reopen his § 2255 proceedings to conduct an evidentiary hearing on Ground One, or grant a COA on Grounds One, Two, Three, Four, Seven, and Eight. While Gordon's Rule 59(e) motion was still pending before the district court, Gordon filed a second-in-time § 2255 motion attacking his conviction as unconstitutional under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*. 597 U.S. 1 (2022).

The district court denied Gordon's Rule 59(e) motion because Gordon did "not allege there [was] any newly discovered evidence or an intervening change in the law, thus his only basis for reconsideration [was] that the [District] Court committed clear error in denying his § 2255

---

[2] Gordon conceded that he was not entitled to relief on Ground Six.

motion." The district court found that it did not commit clear error because "[e]ven if the allegations in Mr. Gordon's § 2255 motion were proved true, he would not be entitled to any relief under 28 U.S.C. § 2255 . . . [as] [h]is assertions do not demonstrate that his trial attorney was unconstitutionally ineffective." For the same reasons, it denied Gordon's request for a COA. It then dismissed his second-in-time habeas motion for lack of jurisdiction as an impermissible second or successive § 2255 motion. It denied the COA for the same reasons.

Gordon now appeals the district court's denials of both of his § 2255 motions.[3] We have certified the following questions on appeal:

1. [W]hether trial counsel's advice regarding appellant's potential sentence amounted to ineffective assistance under the Sixth Amendment, including whether appellant was entitled to an evidentiary hearing on this claim;

2. [W]hether the district court erred by summarily dismissing appellant's other claims pursuant to Habeas Rule 4;

3. [W]hether the district court properly dismissed appellant's second-in-time 28 U.S.C. § 2255 motion as an unauthorized second or successive motion, when the second § 2255 motion was filed (a) before the district court

---

[3] Gordon initially appealed the denials of each § 2255 motion separately, but we consolidated the cases into one appeal. *See* 24-436 Dkt. No. 5 at 2.

resolved appellant's Federal Rule of Civil Procedure 59(e) motion challenging the denial of his first § 2255 motion, and (b) before appellant filed a notice of appeal from the district court judgment denying the first § 2255 motion.

24-436 Dkt. No. 5 at 1–2; 23-2117 Dkt. No. 5 at 1–2. We now evaluate each question in turn.

## III

The district court had jurisdiction over Gordon's original criminal proceedings under 18 U.S.C. § 3231 and had jurisdiction over Gordon's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255(d). We have jurisdiction to review the district court's denial of Gordon's § 2255 motions pursuant to 28 U.S.C. § 2253(a).

## IV

We review *de novo* a district court's decision to deny a § 2255 motion, *Mendoza v. Carey*, 449 F.3d 1065, 1068 (9th Cir. 2006), or dismiss a § 2255 motion as an unauthorized second or successive habeas motion. *United States v. Villa-Gonzalez*, 208 F.3d 1160, 1165 (9th Cir. 2000). We review the district court's decision to deny a defendant's request for an evidentiary hearing for an abuse of discretion. *Mendoza*, 449 F.3d at 1068.

## V

We begin with Gordon's first certified issue on appeal: whether his trial counsel acted ineffectively in violation of the Sixth Amendment by allegedly misadvising him about his sentencing exposure if he proceeded to trial instead of accepting a plea, and whether the district court abused its

discretion by not holding an evidentiary hearing on the issue. We hold that Gordon's counsel did not act ineffectively, even crediting all of Gordon's allegations and assertions, and thus the district court did not abuse its discretion by not holding an evidentiary hearing on the issue.

In his first § 2255 motion, Gordon alleges that his trial counsel never explained to him that if he proceeded to trial, he would likely receive an 87-month sentence and would lose the opportunity for the three-point sentencing reduction for acceptance of responsibility. He also alleges that his trial counsel advised him that the Government had offered him a plea with an advisory sentencing guideline range of 20–24 months and that if he proceeded to trial, Gordon would face a 27–33 month sentence. Gordon asserts that these "sentencing exposure estimate[s] [were] erroneous" and thus constitutionally defective. Gordon also asserts that, without his trial counsel's erroneous sentencing advice, he would not have insisted on proceeding to trial and instead would have pleaded guilty.

The district court evaluated the merits of Gordon's arguments, denied his motion, and declined to grant him an evidentiary hearing on the issue. It found that it was "exceedingly unlikely that trial counsel advised Mr. Gordon in the way he claims" as there was "no guideline range of 20–24 months" under any offense level for his crime. It also cited counsel's affidavit, where he asserted that he never gave Gordon this advice, and emails between trial counsel and the Government sent the day before counsel visited Gordon to discuss the plea. In these emails, the Government indicated Gordon's guideline range would either be 57–71 months or 84–105 months, both significantly longer than the guideline range Gordon alleges his counsel advised. The district court found that the only piece of evidence that

supported Gordon's assertions was a statement by trial counsel at sentencing where he stated that at the beginning of the case the Government had offered Gordon a 24-month sentence if he pled guilty.

However, the district court correctly held that, "even assuming Mr. Gordon's assertions are completely accurate," his claim fails because Gordon did not show that his trial counsel was constitutionally ineffective.  It explained that "[a]n estimated post-trial sentencing range of 27–33 months versus [Gordon's] ultimate sentencing range of 70–87 months was not a gross mischaracterization of the likely outcome sufficient to show deficient performance."

On appeal, Gordon argues that the district court erred by not granting Gordon an evidentiary hearing on this issue because, "[a]t bottom, Gordon's claim that he was offered a 24-month sentence at the beginning of the case is both contradicted and supported by his lawyer's statements."  So, he argues, "[t]he best way to determine which of counsel's representations should be credited 'would be to hold an evidentiary hearing and ask counsel.'"  The Government responds that an evidentiary hearing is not necessary because, as the district court found, Gordon fails to establish deficient performance even crediting his statements.  We agree with the Government.

To succeed on his IAC claim, Gordon must show both that (1) his trial counsel's performance was deficient, and (2) his trial counsel's allegedly deficient performance prejudiced his defense.  *Harrington v. Richter*, 562 U.S. 86, 104–05 (2011) (citing *Strickland*, 466 U.S. at 687–89, 693–94).  Gordon's claim rises and falls on *Strickland*'s deficiency prong, as he argues that his counsel gave him deficient sentencing advice by inaccurately predicting the

discrepancy between the sentence he would receive if he accepted the Government's plea or if he proceeded to trial and was convicted by a jury. If he cannot prove that his counsel's advice was deficient, he cannot prove that it was constitutionally ineffective.

"A deficient performance is one in which counsel made errors so serious that [he] was not functioning as the counsel guaranteed by the Sixth Amendment." *Iaea v. Sunn*, 800 F.2d 861, 864 (9th Cir. 1986) (citing *Strickland*, 466 U.S. at 687). To show that his trial counsel's incorrect sentencing predictions rose to the level of constitutionally deficient conduct, Gordon must show that his trial counsel's sentencing prediction was a "gross mischaracterization of the likely outcome presented in the case, combined with the erroneous advice on the possible effects of going to trial." *Id.* at 865. And to merit an evidentiary hearing on the issue, Gordon "must establish that his allegation[s], if proven, would establish a constitutional deprivation." *Turner v. Calderon*, 281 F.3d 851, 890 (9th Cir. 2002) (internal quotation marks and citation omitted).

Gordon does not meet his burden of showing that his counsel's representation was constitutionally deficient, even if we credit all of Gordon's assertions regarding his trial counsel's sentencing advice. Thus, the district court did not err by not granting Gordon relief and did not abuse its discretion by not granting him an evidentiary hearing. The difference between trial counsel's alleged representation that Gordon faced sentencing exposure of 27–33 months if he proceeded to trial, and Gordon's actual 87-month sentence, at most a sixty-month discrepancy, is not a "gross mischaracterization of the likely outcome" of Gordon's case under our caselaw. *Iaea*, 800 F.2d at 865.

In cases where we have found deficient performance based on a gross mischaracterization of a case's likely outcome, there were either additional, aggravating factors present, or the discrepancy between the sentence predicted and the sentence received was significantly larger than Gordon's alleged discrepancy.  For example, in *Iaea*, there was other evidence of erroneous advice beyond an erroneous sentencing prediction.  Counsel told Iaea and his family "on several occasions that there was a good chance of his getting probation if he accepted the plea bargain" and that "the chance of his getting an extended sentence was 'almost zero' and that he 'could almost not consider it.'"  *Id.* at 863. Counsel also told Iaea that the state minimum sentencing law applied when it did not and when she had "obtained the prosecutor's promise not to ask for minimum sentencing." *Id.* at 864–65.  There was also a large discrepancy between counsel's predicted sentence of probation, and Iaea's ultimate sentence of multiple life sentences, twenty-year sentences, and ten-year sentences. *Id.* at 863, 865.  We found that this combination of a gross mischaracterization of the likely outcome of the case, probation versus multiple life sentences, along with counsel's numerous pieces of erroneous advice about going to trial, fell "below the level of competence required of defense attorneys" and was constitutionally deficient. *Id.* at 865.

Similarly, in *United States v. Manzo*, we highlighted Manzo's counsel's "failure to anticipate that the offenses would be grouped for sentencing purposes," as well as the sentencing disparity of almost 160 months between counsel's predicted sentence and the sentence Manzo received in finding that counsel's representation was deficient.  675 F.3d 1204, 1208–10 (9th Cir. 2012).  Gordon does not point to any additional factors beyond the alleged

sentencing disparity, like the factors present in *Iaea* and *Manzo*, that make his counsel's alleged sentencing advice a gross mischaracterization of the sentence he received. Thus, "there is no other evidence in the record that would elevate [Gordon's] attorney's prediction to the level of Iaea's counsel's patently erroneous advice." *Womack v. Del Papa*, 497 F.3d 998, 1003 (9th Cir. 2007).

Nor is the alleged sixty-month discrepancy as egregious as the discrepancies in cases in which we have found a gross mischaracterization with no additional aggravating factors. For example, in *Chacon v. Wood*, we found a gross mischaracterization where Chacon's counsel told him via an interpreter that if he entered a guilty plea, he would serve three months in jail, and he actually received ten years. 36 F.3d 1459, 1464–65 (9th Cir. 1994). Similarly, in *United States v. Davis*, we affirmed the district court's finding that counsel had grossly mischaracterized the outcome of Davis's case where counsel advised Davis that he was likely to receive probation, and he received the statutory maximum of eight years. 428 F.3d 802, 804–06, 808 (9th Cir. 2005). *See also United States v. Chacon-Palomares*, 208 F.3d 1157, 1158–60 (9th Cir. 2000) (remanding for an evidentiary hearing where counsel allegedly advised Chacon-Palomares he faced a maximum prison sentence of six months, and he was sentenced to 108 months).

We have also previously upheld sentencing discrepancies of sixty months, or more, without finding counsel's representation to be deficient. *See Sophanthavong v. Palmateer*, 378 F.3d 859, 868–69 (9th Cir. 2004) (finding no gross mischaracterization where defendant received a 180-month sentence by pleading but faced a 121-month sentence under state sentencing guidelines); *Womack*, 497 F.3d at 1002–04 (finding no gross mischaracterization

where counsel advised defendant that pleading guilty was his best chance of receiving a 30–40 year sentence and defendant received eight terms of life imprisonment without parole as no other factors were present to make representation deficient).

The district court did not err by finding no deficiency because counsel's sentencing prediction was not a gross mischaracterization of the sentence Gordon received, and no other aggravating factors were present. The district court also did not abuse its discretion by denying an evidentiary hearing because even if all of Gordon's allegations were proven true, he cannot prove that his counsel acted with constitutional deficiency.[4]

## VI

The second certified question before us is whether the district court erred by summarily dismissing Gordon's remaining IAC claims pursuant to Habeas Rule 4 in light of

---

[4] Gordon also argues against the gross mischaracterization test itself, arguing that it conflicts with the Supreme Court's decision in *Glover v. United States*, 531 U.S. 198 (2001). However, *Glover* discusses prejudice in the context of sentencing calculations and is thus inapplicable here. *See id.* at 202–04 ("the question of deficient performance is not before us"). Gordon further argues that the gross mischaracterization test is "unworkable." However, we are bound by our own precedent that the gross mischaracterization test applies to determine whether a disparity between counsel's sentencing prediction and the sentence received rises to the level of constitutional deficiency. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Circuit law . . . binds all courts within a particular circuit, including the court of appeals itself. Thus, the first panel to consider an issue sets the law not only for all the inferior courts in the circuit, but also future panels of the court of appeals. Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court.")

our decision in *Browning v. Baker*, 875 F.3d 444 (9th Cir. 2017). In *Browning*, we held that the constitutional right to effective counsel is a right "*in toto*—it promises that counsel will perform reasonably" and so we should consider "counsel's conduct *as a whole* to determine whether it was constitutionally adequate." *Id.* at 471. In *Browning*, the district court had initially limited the COA to particular claims related to the attorney's failure to investigate certain avenues of evidence. *Id.* However, we found "[t]his approach was misguided" and that "the IAC portion of the COA should have been crafted at a higher level of generality." *Id.* We expanded the COA to encompass the whole of the right that Browning contended was violated—his right to "effective assistance of counsel by his trial lawyer[] . . . to investigate and prepare for trial." *Id.* (internal quotation marks omitted). We found that "this articulation more appropriately frame[d] the constitutional right" Browning asserted was violated. *Id.*

In cases following *Browning*, we have applied *Browning*'s logic to broaden COAs in IAC cases so that we can evaluate the adequacy of counsel's representation "*as a whole*" in a particular phase of the defendant's criminal case. *Id.* In practice, this requires us to examine a defendant's uncertified IAC claims to determine if any arise from the same phase of a defendant's criminal case as their certified claims; if so, we evaluate their merits.

For example, in *White v. Ryan*, we expanded the COA to include all of White's claims related to "the penalty phase of resentencing" where the district court had initially only certified a claim related to counsel's failure to investigate and present mitigating evidence at resentencing. 895 F.3d 641, 645 n.1 (9th Cir. 2018). This is because "White [had] but a single claim regarding his right to the

effective assistance of counsel at the penalty phase of resentencing." *Id.* This claim encompassed White's uncertified claims alleging counsel's various deficiencies at the penalty phase of resentencing, so we considered those claims on the merits. *Id.*

Similarly, in *McGill v. Shinn*, "McGill's lone certified claim [arose] out of counsel's performance at the penalty phase of his trial." 16 F.4th 666, 678 (9th Cir. 2021). So, we expanded the COA to "consider 'counsel's conduct *as a whole*'" at the penalty phase of McGill's trial. *Id.* (quoting *Browning*, 875 F.3d at 471). This allowed us to consider on the merits McGill's uncertified IAC claim related to the trial's penalty phase. *Id.* However, it did not allow us to consider McGill's uncertified claims alleging "counsel's deficient performance at the *guilt* phase at [McGill's] trial," as these claims arose from a "separate and discrete" phase of McGill's criminal proceedings, and thus were not encompassed by the right McGill asserted in his certified claim. *Id.* at 678–79.

Finally, in *Montiel v. Chappell*, we highlighted that "a district court errs by limiting a COA to individual ineffective-assistance subclaims corresponding to particular instances of an attorney's conduct within a single trial." 43 F.4th 942, 958–59 (9th Cir. 2022) (citing *Browning*, 875 F.3d at 471). There, we expanded the COA to "consider the broader issue whether [counsel's] performance, considered as a whole, amounted to ineffective assistance of counsel at the 1986 penalty trial." *Id.* at 959. This allowed us to consider on the merits two of Montiel's uncertified claims relating to his counsel's performance at the 1986 penalty trial, as they were encompassed by the broader right Montiel asserted. *Id.* at 958. *C.f. Creech v. Richardson*, 59 F.4th 372, 383 (9th Cir. 2023) (refusing to expand the

COA where the record showed the district court analyzed counsel's conduct during resentencing "*as a whole* to determine whether it was constitutionally adequate" (quoting *Browning*, 875 F.3d at 471)).

To determine whether the district court erred under *Browning* by not considering Gordon's right to effective assistance of counsel "*as a whole*," we must first determine what "general" right to effective assistance of counsel Gordon asserts in his certified claim. *See Browning*, 875 F.3d at 471. In his certified claim, Gordon asserts a right to effective assistance of counsel during plea negotiations, specifically alleging that his counsel gave him deficient advice regarding sentencing. So, under *Browning*, the district court should have more broadly considered whether Gordon received ineffective assistance of counsel during the plea negotiation stage, instead of only considering the sentencing advice Gordon received during plea negotiations. We now expand the COA granted to Gordon on the sentencing advice issue to consider whether Gordon received effective assistance of counsel at the plea negotiation stage.

We must determine whether any of Gordon's uncertified IAC claims fall under our expanded certified question— whether Gordon received effective assistance of counsel at the plea negotiation stage—and if they do, we will consider them on the merits. Gordon raises numerous uncertified grounds for relief based on IAC: (2) for failing to move to dismiss a fatally defective indictment; (3) for providing him with inadequate pretrial consultation and conducting inadequate pretrial investigations; (4) for failing to file a motion to suppress the evidence seized from the Tahoe; (5) for failing to request a paid informant jury instruction as Williams was a paid informant; (7) for failing to file a

motion to acquit under Federal Rule of Criminal Procedure 29; and (8) alleging his appellate counsel provided him ineffective assistance of counsel. Gordon concedes that Ground Seven and Ground Eight have "nothing to do with [counsel's] performance during the plea-bargaining stage," so we do not consider them. That leaves Grounds Two, Three, and Four for us to evaluate.[5]

We look first at Ground Two, Gordon's assertion that his trial counsel was ineffective by failing to move to dismiss a fatally defective indictment. Counsel's decision whether to move to dismiss an indictment under Federal Rule of Criminal Procedure 12(b)(3)(B) may have influenced the advice he gave Gordon during plea negotiations, so we evaluate the claim on the merits.

Gordon argues that his counsel was ineffective by not moving to dismiss his indictment because the indictment did not track the statutory language of 18 U.S.C. § 922(g)(1) nor did it allege that Gordon knew he was a felon when he possessed the firearms in question, as required by *Rehaif v. United States*. 588 U.S. 225 (2019). On appeal, Gordon concedes that the wording of the indictment "clearly put Gordon on notice that his alleged possession of the firearms was unlawful under federal law" and that the wording of the indictment "more faithfully tracks that used in § 922(g)(1)" than his suggested language. Thus, he concedes that "the district court properly exercised its authority when it rejected Gordon's claim that his lawyer was ineffective for failing to seek dismissal of the Indictment simply because it did not

---

[5] Gordon does not argue that we should consider Ground Five on the merits, so we do not consider it.

include his preferred terminology in count one." As Gordon concedes this issue, we do not evaluate it further.

Gordon next argues that his counsel was ineffective by failing to move to dismiss the indictment as defective because it did not allege that Gordon was aware of his status as a felon, as required by *Rehaif*. This claim faces a variety of hurdles that it ultimately fails to clear. Looking first at deficiency, *Rehaif* was decided after the Government issued the indictment Gordon challenges, and we have not yet decided whether *Rehaif* may be applied retroactively on collateral review. *See White v. Quintana*, No. 22-0150, 2022 WL 16587236, at *4 (C.D. Cal. Sept. 2, 2022) ("Neither the Third Circuit nor the Ninth Circuit appears to have expressly addressed whether *Rehaif* recognizes a non-constitutional right that may be applied retroactively on collateral review."); *Mujahidh v. United States*, No. 19-1852, 2020 WL 1330750, at *1 n.2 (W.D. Wash. Mar. 23, 2020) ("Although the Ninth Circuit has not ruled on the issue, numerous other courts have held that *Rehaif* is not retroactively applicable on collateral review."). And, counsel stipulated to the fact that Gordon knew of his felony status, though Gordon maintains he did not know about this stipulation. Thus, it is not clear that counsel's decision not to file a Rule 12(b)(3)(B) motion was deficient.

However, even assuming deficiency, Gordon cannot prove he was prejudiced by his counsel's failure to file the Rule 12(b)(3)(B) motion as the jury was explicitly instructed, twice, that in order to convict him of being a felon in possession of a firearm, they had to find beyond a reasonable doubt that Gordon knew he was a felon at the time he possessed the firearms in question. Court's Final Jury Instructions (Complete Packet Read to Jury) at 24, 46, *United States v. Gordon*, No. 19-cr-00046 (D. Mont. Oct. 25,

2019) (No. 75). The jury found that Gordon knowingly possessed two firearms "while knowing he was a felon" and convicted him of being a felon in possession of a firearm. Redacted Jury Verdict at 1–2, *United States v. Gordon*, No. 19-cr-00046 (D. Mont. Oct. 24, 2019) (No. 73). Gordon cannot establish prejudice because, even if counsel was deficient for failing to move to dismiss the indictment based on its non-compliance with *Rehaif*'s requirements, the jury was instructed in line with *Rehaif*'s requirements, and it convicted on the § 922(g)(1) charge.

We next move to Ground Three, Gordon's assertion that his counsel provided him with inadequate pretrial consultation and conducted inadequate pretrial investigation. Gordon argues that the COA should be expanded to include this ground because it relates to counsel's pretrial performance and may have influenced counsel's advice to accept or reject the plea offer. We disagree. The specific actions that Gordon lists in Ground Three, like interviewing opposing witnesses and entering stipulations with the Government, all relate to the trial phase of the litigation in this case, not the plea negotiation phase. We thus do not expand the COA under *Browning* to consider the merits of this claim, which occurred at a different stage in the proceedings.

In Ground Four, Gordon argues that counsel's failure to suppress evidence seized by law enforcement during the traffic stop relates to counsel's pretrial performance as it may have affected his advice to accept or reject a plea offer. The Government concedes that this claim might relate to the plea negotiation phase, so we could expand the COA to consider it with Ground One. We agree that counsel's decision not to file a motion to suppress may have influenced counsel's advice to Gordon during plea negotiations, so we

expand the COA to include Ground Four and consider its merits.

The district court "liberally construe[d]" Gordon's arguments on Ground Four "as a challenge to the initial traffic stop, Trooper Fetterhoff's decision to extend the detention to investigate suspected drug activity, and the actual search of the vehicle." On appeal, Gordon only challenges the prolongation of the stop, which he argues was not supported by reasonable suspicion, and the search of the vehicle.

In its Rule 4 analysis, the district court evaluated whether a motion to suppress could have succeeded based on Fetterhoff's unlawful prolongation of the traffic stop for excessive time in the freeway's passing lane. The district court found that Fetterhoff lawfully prolonged the traffic stop based on the reasonable suspicion that the Tahoe was transporting illegal drugs because of the information Fetterhoff had previously received from the MRDTF officers and the suspicious activity he observed. It also found that any challenge to the search of the vehicle would have failed because Fetterhoff had a valid search warrant and Gordon did not argue that the warrant was not based on probable cause or was based on false or misleading information. Thus, the district court dismissed this ground in its Rule 4 analysis because it found that trial counsel was not deficient for failing to bring an unsuccessful motion to suppress. We agree.

To show that his trial counsel was ineffective for failing to file a motion to suppress based on the length of the traffic stop or the unconstitutionality of the search warrant, Gordon must show "that (1) the overlooked motion to suppress would have been meritorious and (2) there is a reasonable

probability that the jury would have reached a different verdict absent the introduction of the unlawful evidence." *Ortiz-Sandoval v. Clarke*, 323 F.3d 1165, 1170 (9th Cir. 2003) (citations omitted).

Gordon has not shown that a motion to suppress based on either of his arguments would have been successful, so he has not carried his burden of showing that his attorney's performance was deficient. As the district court pointed out, Fetterhoff had reasonable suspicion of illegal activity: the MRDTF had given Fetterhoff information about the Tahoe's suspicious activity circling the coffee stand and Gordon jumping into the car from the house with a black bag; Williams appeared impaired; Williams gave Fetterhoff a false name for Gordon; Fetterhoff observed drug paraphernalia in the car; and Gordon and Williams provided inconsistent stories about where they were going and what they were doing. This was sufficient to give Fetterhoff reasonable suspicion, allowing him to extend the vehicle stop. *See United States v. Evans*, 786 F.3d 779, 788 (9th Cir. 2015) ("Reasonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion." (citation and internal quotation marks omitted)). Thus, any motion to suppress based on these grounds would not have succeeded.

Gordon also has not shown why a motion to suppress evidence discovered pursuant to a valid search warrant would have been successful. Gordon alleges that there may have been deficiencies in the warrant to search the Tahoe, but does not point to anything specific, and thus has not met his burden of showing that the motion to suppress the evidence found pursuant to a lawful search warrant would have been successful.

Thus, we expand the COA under *Browning* to consider Gordon's right to effective assistance of counsel at the plea negotiation stage "*in toto*," but hold that Gordon has not established that he received ineffective assistance of counsel at this stage, after considering the merits of his certified and uncertified claims.  875 F.3d at 471.

## VII

The final question we certified was whether the district court properly dismissed Gordon's second-in-time 28 U.S.C. § 2255 motion as an unauthorized second or successive habeas motion when it was filed (a) before the district court resolved his Rule 59(e) motion challenging the denial of his first § 2255 motion, and (b) before Gordon filed a notice of appeal.  This question hinges on whether Gordon's first § 2255 motion was still pending before the district court when Gordon filed his second-in-time § 2255 motion.

Gordon argues that it was.  Specifically, he argues that under *Banister v. Davis*, his Rule 59(e) motion suspended the finality of the district court's judgment denying his initial § 2255 motion, meaning that his first § 2255 motion was still pending before the district court when he filed his second-in-time motion.  590 U.S. 504 (2020).  So, he argues that the district court should have interpreted his second-in-time § 2255 motion as a permissible motion to amend his first § 2255 motion instead of dismissing it as an unauthorized second or successive motion.  He asks us to reverse the district court's dismissal and remand this case so the district court can exercise its discretion under Federal Rule of Criminal Procedure 15 and determine whether Gordon can amend his original § 2255 motion.

The Government does not address *Banister*'s effect, if any, on Gordon's § 2255 motions, but argues that Gordon's second-in-time § 2255 motion must be considered an impermissible second or successive motion instead of a motion to amend because the district court "could not have entertained a motion to amend under Rule 15 unless and until it reopened or set aside" its judgment on Gordon's first § 2255 motion. This is an issue of first impression for us, and we agree with Gordon that, under *Banister*, the district court should have considered his second-in-time § 2255 motion to be a permissible motion to amend his first § 2255 motion.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), second or successive § 2255 motions are generally proscribed unless certain narrow criteria are met. *Gonzalez v. Sherman*, 873 F.3d 763, 767 (9th Cir. 2017). "Generally, 'a petition will not be deemed second or successive unless, at a minimum, an earlier-filed petition has been finally adjudicated.'" *Balbuena v. Sullivan*, 980 F.3d 619, 635 (9th Cir. 2020) (quoting *Goodrum v. Busby*, 824 F.3d 1188, 1194 (9th Cir. 2016)). "Thus, when a petitioner files a new petition while his first petition remains pending, courts have uniformly held that the new petition cannot be deemed second or successive." *Id.* (quoting *Goodrum*, 824 F.3d at 1194).

A motion made under Rule 59(e) is "part and parcel of the first habeas proceeding." *Banister*, 590 U.S. at 507. A timely Rule 59(e) motion "'suspends the finality of the original judgment' for purposes of an appeal" as "there is no longer a final judgment to appeal from." *Id.* at 508 (quoting *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 373 n.10 (1984)).

*Banister* extensively discusses the role and function of Rule 59(e) motions in habeas proceedings, ultimately concluding "that Rule 59(e) motions are not second or successive petitions, but instead a part of a prisoner's first habeas proceeding." *Id.* at 517.  While *Banister*'s holding is not directly applicable to Gordon's claim, its rationale is.  In *Banister*, the Court explains that "[a] timely Rule 59(e) motion . . . suspend[s] the finality of any judgment, including one in habeas—thus enabling a district court to address the matter again." *Id.* at 514 (internal quotation marks and citation omitted).  It continues:

> [i]n timing and substance, a Rule 59(e) motion hews closely to the initial application; and the habeas court's disposition of the former fuses with its decision on the latter. Such a motion does not enable a prisoner to abuse the habeas process by stringing out his claims over the years.  It instead gives the court a brief chance to fix mistakes before its (single) judgment on a (single) habeas application becomes final and thereby triggers the time for appeal.

*Id.* at 517.  *Banister*'s language focusing on the unity of the Rule 59(e) motion and the § 2255 motion, and the suspension of the judgment's finality on the latter until the former is resolved, strongly support Gordon's argument that the district court's decision on the first § 2255 motion was pending when Gordon filed his second-in-time motion. *See also Rivers v. Guerrero*, 145 S. Ct. 1634, 1644 (2025) (reiterating *Banister*'s Rule 59(e) reasoning).

The Government argues that our caselaw forecloses Gordon's argument, but we are not convinced. First, it cites to *Beaty v. Schriro*, where the defendant "asked the district court to amend the original habeas petition to include a plethora of other claims" after the district court ruled against him following an evidentiary hearing. 554 F.3d 780, 782 (9th Cir. 2009). He also filed a variety of *pro se* submissions while his appeal was pending. *Id.* We held that the defendant needed to meet 28 U.S.C. § 2244(b)'s standard for second or successive habeas motions because "allow[ing] the filing of new claims this late in the process would essentially nullify the rules about second and successive petitions created by [AEDPA]." *Id.* at 783 (citation omitted).

Similar to Gordon, the defendant in *Beaty* did not try to amend his claims until after the district court had denied his motion for habeas relief. However, *Beaty* does not discuss the unique situation at play here—what happens when the defendant files an additional habeas motion while the district court is considering his Rule 59(e) motion. The defendant in *Beaty* filed his additional habeas motion when his appeal was already before this court. And *Beaty* highlighted that the habeas motion could not be amended "after the district court has ruled and proceedings have begun in this court (much less after the Supreme Court denied certiorari on the claims on which we had already ruled)." *Id.* at 783 n.1. When Gordon filed his second-in-time motion, he had not appealed the district court's denial of his first motion to us, so *Beaty* does not foreclose Gordon's argument.

The Government also points to *Balbuena v. Sullivan*, where we found that the district court had properly determined that a defendant's Rule 60(b) motion was a second or successive application for habeas relief.

980 F.3d at 636–37. However, in *Banister*, the Supreme Court specifically differentiated between Rule 60(b) motions and Rule 59(e) motions, holding that Rule 59(e) motions are not second-or-successive habeas motions. 590 U.S. at 518–21. The Government also argues that the district court is "without power to entertain a motion to amend because it has already decided the case on the merits and entered judgment." However, this does not take into account *Banister*'s language declaring that the Rule 59(e) motion suspends the finality of the district court's decision, thus allowing motions to amend to be filed at that time. Thus, Gordon is correct that, under *Banister*, the finality of the district court's original denial of his § 2255 motion was suspended while it considered his Rule 59(e) motion, allowing Gordon to file an additional habeas claim which the district court could consider as a motion to amend the first habeas motion.

Nevertheless, it is unnecessary for us to remand this case to the district court for it to consider whether to allow Gordon to amend his original motion because the only argument Gordon raises in his second-in-time § 2255 motion is foreclosed by our caselaw. In his second-in-time § 2255 motion, Gordon argues only that his § 922(g) conviction is unconstitutional post-*Bruen* because it violates his rights under the Second Amendment. However, our decision in *United States v. Duarte* directly forecloses Gordon's argument. 137 F.4th 743, 762 (9th Cir. 2025) (en banc). In *Duarte*, we held that § 922(g)(1) is constitutional as applied to non-violent felons like Gordon. *Id.* Because *Duarte* forecloses Gordon's only argument in his second-in-time § 2255 motion, amendment of Gordon's original motion would be futile. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

# VIII

In conclusion, the district court did not err by finding that, even crediting Gordon's assertions, Gordon's trial counsel's representation was not deficient, and thus no evidentiary hearing was needed on the issue. The district court should have considered Gordon's claim broadly as alleging IAC during the plea negotiation stage. We certified this broader question, however, all of Gordon's claims relating to IAC at the plea negotiation stage fail on the merits. And finally, the district court erred by dismissing Gordon's second-in-time § 2255 motion as an impermissible second or successive habeas motion because his Rule 59(e) motion was still pending when he filed it, making Gordon's second-in-time motion a permissible motion to amend. However, we do not remand this case as Gordon's only argument in his second motion is foreclosed, making any amendment futile.

**AFFIRMED.**